J-S75001-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: D.C.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.R., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 874 EDA 2016 |

Appeal from the Order Entered February 18, 2016
in the Court of Common Pleas of Philadelphia County
Family Court at No(s):  CP-51-AP-0000091-2016,
CP-51-DP-0002139-2013

| | | |
|---|---|---|
| IN THE INTEREST OF: O.G.Z., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.R., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 875 EDA 2016 |

Appeal from the Order Entered February 18, 2016
in the Court of Common Pleas of Philadelphia County
Family Court at No(s):  CP-51-AP-0000092-2016,
CP-51-DP-0002137-2013

J-S75001-16

IN THE INTEREST OF: W.G. JR., A    :    IN THE SUPERIOR COURT OF
MINOR                              :         PENNSYLVANIA
                                   :
                                   :
APPEAL OF: J.R., MOTHER            :
                                   :
                                   :
                                   :
                                   :
                                   :    No. 876 EDA 2016

Appeal from the Order Entered February 18, 2016
in the Court of Common Pleas of Philadelphia County
Family Court at No(s):  CP-51-AP-0000093-2016,
CP-51-DP-0002138-2013

BEFORE:  BOWES, MOULTON, and MUSMANNO, JJ.

MEMORANDUM BY BOWES, J.:                    **FILED NOVEMBER 18, 2016**

J.R. ("Mother") appeals from the decrees entered February 18, 2016, in the Court of Common Pleas of Philadelphia County that granted the petitions of the Philadelphia Department of Human Services ("DHS") to involuntarily terminate her parental rights to two daughters, D.C.S. and O.G.Z., and a son, W.G., Jr.[1]  Mother additionally appeals from the order changing the permanency goal of D.C.S. to adoption pursuant to the Juvenile Act, 42 Pa.C.S. § 6351.[2]  We affirm.

---

[1] In a separate decree entered on the same date, the trial court terminated the parental rights of the unknown father of D.C.S.  Subsequently, on April 11, 2016, the trial court terminated the parental rights of R.Z. as to O.G.Z. The matter relating to W.G., Jr.'s father was continued due to an issue with service.  Not one of the fathers is a party to the instant appeal.

[2] While Mother purports to appeal the goal change as to all three children, the court only entered a goal change order as to D.C.S., despite finding on the record that it was in the best interests of all three children to change the
*(Footnote Continued Next Page)*

- 2 -

O.G.Z. was born during November 2004. Mother had W.G., Jr. in October 2008, and gave birth to D.C.S. during November 2012. DHS has had extensive involvement with the family since 2013 based primarily on Mother's drug abuse and her neglect of the children. On September 21, 2013, DHS received a General Protective Services (GPS) report concerning Mother's abuse of drugs and neglect of her mental health treatment.

Prior to the adjudication of dependency, DHS installed in-home services through Community Umbrella Agency (CUA). However, Mother squandered that assistance. During October 2013, she admitted to continuing abuse of marijuana and PCP, refused to cooperate with service providers, and neglected to take W.G., Jr. to his mental health treatments. Additionally, while Mother had access to appropriate housing, she elected to forgo that assistance so that she and the three children could share a room with her paramour in a residence that housed a convicted felon.

On November 14, 2012, the trial court adjudicated O.G.Z., W.G., Jr., and D.C.S. dependent and committed them to the care and custody of DHS. Throughout the dependency proceedings, the children's permanency goals were reunification. In furtherance of that objective, a Family Service Plan

_(Footnote Continued)_ _____

permanency goal to adoption. As the change of a child permanency goal to adoption is not a prerequisite to involuntary termination, the omissions do not impact our review. *See In re M.T.*, 101 A.3d 1163, 1166 (Pa.Super. 2014) (*en banc*) ("a goal change from reunification to adoption is not a necessary prerequisite to the initiation of involuntary termination proceedings.").

("FSP") was crafted that included, *inter alia*, the requirement that Mother "ensure [her] drug and alcohol needs are being met, ensure mental health needs are being met, [attend] court ordered visitation, and [maintain] safe and suitable housing." N.T., 2/18/16, at 15-16.

The children remained in DHS care for approximately fifteen months. However, on February 27, 2014, the trial court discharged that commitment and ordered the return of physical and legal custody of the children to Mother. The dependency adjudication persisted, however, and the trial court directed DHS to continue to supervise the family.

Whatever progress Mother had achieved prior to the children's return to her care during February 2014 quickly dissipated. On March 5, 2014, Mother stopped participating in drug and alcohol treatment, and she was subsequently discharged from the program on April 5, 2014. Thereafter, she tested positive for PCP on July 16, and August 8, 2014.

On August 14, 2014, the trial court reinstated the commitment of O.G.Z. and D.C.S. to the care and custody of DHS. W.G., Jr. was placed with his father under DHS supervision until January 22, 2015 when the trial court ordered his recommitment to the agency's custody.

On February 3, 2016, DHS filed petitions to terminate Mother's parental rights and to change the children's permanency goals to adoption. The trial court held a combined goal change/termination hearing on February 18, 2016. At the hearing, DHS presented the testimony of Jose DeJesus, who was the CUA case manager assigned to the family. Mother testified on

her own behalf. By separate decrees entered February 18, 2016, the trial court involuntarily terminated Mother's parental rights to D.C.S., O.G.Z., and W.G., Jr. pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b). Additionally, the trial court entered an order changing the permanency goal of D.C.S. to adoption.

Thereafter, on March 18, 2016, Mother, through appointed counsel, filed timely notices of appeal, along with concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i). This Court consolidated the appeals *sua sponte* on April 21, 2016.

Mother raises the following issues for review:

1. Did the [t]rial [c]ourt err in terminating [Mother]'s parental rights under Pa.C.S. Section 2511?

2. Did the [t]rial [c]ourt err in finding that termination of parental rights best served [D.C.S.'s, O.G.Z.'s, and W.G., Jr.'s] development, physical and emotional needs under sub-section 2511(b)?

3. Did the [t]rial [c]ourt err in changing [D.C.S.'s, O.G.Z.'s, and W.G., Jr.'s] goal to adoption?

Mother's brief at vi.

In matters involving involuntary termination of parental rights, our standard of review is as follows:

The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." *In re Adoption of S.P.*, 47 A.3d 817, 826 (Pa. 2012). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." *Id.* "[A] decision may be reversed for an

- 5 -

abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." ***Id.*** The trial court's decision, however, should not be reversed merely because the record would support a different result. ***Id.*** at 827. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. ***See In re R.J.T.***, 9 A.3d [1179, 1190 (Pa. 2010)].

***In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013). "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." ***In re M.G.***, 855 A.2d 68, 73-74 (Pa.Super. 2004) (citation omitted). "[I]f competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." ***In re Adoption of T.B.B.,*** 835 A.2d 387, 394 (Pa.Super. 2003) (citation omitted).

The termination of parental rights is guided by § 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, which requires a bifurcated analysis of the grounds for termination followed by the needs and welfare of the child.

> Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted). We have defined clear and convincing evidence as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*) (quoting *Matter of Adoption of Charles E.D.M. II*, 708 A.2d 88, 91 (Pa. 1998)).

In this case, the trial court terminated Mother's parental rights pursuant to 23 Pa.C.S. §§ 2511(a)(1), (2), (5), and (8), as well as (b). We have long held that, in order to affirm a termination of parental rights, we need only agree with the trial court as to any one subsection of § 2511(a), as well as § 2511(b). *In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc)*. Here, we analyze the court's termination pursuant to §§ 2511(a)(2) and (b), which provide as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . .
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> . . .
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the

- 7 -

child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2), (b).

We first examine the court's termination of Mother's parental rights pursuant to § 2511(a)(2).

In order to terminate parental rights pursuant to 23 Pa.C.S.A § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa.Super. 2003) (citation omitted). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re Adoption of C.D.R.*, 111 A.3d 1212, 1216 (Pa.Super. 2015) (quoting *In re A.L.D.*, 797 A.2d 326, 337 (Pa.Super. 2002)).

In addressing § 2511(a)(2), the trial court first recognized the precept that "grave concerns about [a parent's] ability to provide the level of protection security and stability that [a] child needed was sufficient to

warrant termination." Trial Court Opinion, 5/20/16, at 4-5 (unpaginated) (citation omitted). The court then emphasized Mother's extensive history of chronic drug abuse, including her hospitalization for a drug overdose. *Id*. at 5.

Mother argues that DHS "failed to present clear and convincing evidence that the 'causes of incapacity, abuse, neglect or refusal cannot or will not be remedied.'" Mother's brief at 3. Mother asserts that, since she was "fully compliant" with all FSP objectives prior to the filing of the termination petitions, regularly visiting with D.C.S., O.G.Z., and W.G., Jr., and participating in mental health and drug and alcohol treatment, she established that she "can and did remedy the reasons the children came into care." *Id*. We disagree.

Our review of the certified record supports the trial court's finding of sufficient grounds for termination under § 2511(a)(2). Mother failed to fully comply with her FSP objectives, notably drug and alcohol treatment and visitation. N.T., 2/18/16, at 15-20, 22. Mr. DeJesus testified that Mother still had not "successfully completed" drug and alcohol treatment. *Id*. at 17-18. He further indicated that, while Mother was currently enrolled in a drug and alcohol program, she was in danger of being discharged due to her non-compliance. *Id*. at 17, 30. Moreover, Mother not only tested positive for drugs on numerous occasions between July 2014 and July 2015, she tested positive for drugs as recently as January 20, 2016, her final screening prior to the evidentiary hearing. *Id*. at 12-13, 16-17. *See also* DHS Exhibit 2.

Although Mr. DeJesus acknowledged several months with negative drug screens, he also identified "lapses in treatment where [Mother] did not attend treatment [and] therefore [the agency] could not do any screens on her at that time." *Id*. at 30-31. Significantly, Mr. DeJesus "still [had] concerns with [Mother's] drug and alcohol use based upon the recent positive screen." *Id*. at 18. He further opined that, given Mother's continuing drug abuse, she "ha[d] not remedied that issue which caused [Children] to come into care." *Id*. Hence, the record supports the trial court's finding that Mother cannot or will not remedy this situation. *See id.* Mother has chronically abused drugs over an extended period of time, as evidenced by multiple positive drug tests. Additionally, she has proven incapable of successfully completing a substance abuse treatment regimen.

As to Mother's visitation record, she attended only forty of the fifty-seven visitations with D.C.S., O.G.Z., and W.G., Jr., offered since August 2015. *Id*. at 19. Notably, Mother missed eight visitations, or approximately three to four weeks, in October of 2015 when she was hospitalized due to an overdose of PCP. *Id*. at 19-20. Mother missed two visitations in December of 2015 and was late for two visits in January of 2016, which had to be canceled as a result. *Id*. at 22. The trial court noted the lack of harm to D.C.S., O.G.Z., and W.G., Jr., as a result of the missed visitations with Mother. The children's resilience is a testament to the stability in their respective foster homes and the bonds they enjoy in those environments rather than anything attributable to Mother. For all of the reasons that we

outlined *supra*, we find the record substantiates the trial court's conclusion that Mother's repeated and continued incapacity and neglect has caused the children to be without the essential parental control necessary for their physical and mental well-being. Thus, we discern no trial court error in this regard. *See In re Adoption of M.E.P.*, 825 A.2d at 1272.

We next determine whether termination was proper under § 2511(b). With regard to § 2511(b), our Supreme Court has stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa.Super. 2012). In *In re E.M.*, 620 A.2d [481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791. However, as discussed below, evaluation of a child's bonds is not always an easy task.

*In re T.S.M.*, 71 A.3d at 267. "[I]n cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case." *In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa.Super. 2010) (citations omitted).

When evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, § 2511(b) does not require a formal bonding evaluation."

- 11 -

*In re Z.P.*, 994 A.2d 1108, 1121 (Pa.Super. 2010) (citing *In re K.K.R.-S.*,

958 A.2d 529, 533 (Pa.Super. 2008) (internal citations omitted).

In discussing § 2511(b), the trial court expressed:

> In the instant matter, O.G.Z. and D.C.S. are in a pre-adoptive home together. O.G.Z. shares her parent-child relationship with the foster parent. She has a strong bond with the foster parent. O.G.Z. and D.C.S. refer to the foster parents as "mom-mom" and "pop-pop[.]" The foster parents provide them with love, safety, stability and support. The foster parents meet all of their medical, educational and developmental needs. W.G.[, Jr.,] is in a kinship foster home with his paternal aunt. W.G.[, Jr.'s] primary parent-child bond is with his foster parent. He looks to the foster parent for love, safety, stability and support. The foster parent meets all of his needs. Moreover, the social worker testified that the children would not suffer irreparable harm if the mother's rights were terminated. Lastly, the testimony indicated that it would be in the best interest of the children if the mother's parental rights were terminated and the children's goal changed to adoption.

Trial Court Opinion, 5/20/16, at 6 (unpaginated) (citations to record

omitted).

Mother argues "termination [w]ould not be in the best interest of [the]

children as it would terminate the only love, comfort, security and stability

that these children have ever known." Mother's brief at 5. She highlights

the testimony of Mr. DeJesus that D.C.S., O.G.Z., and W.G., Jr., were happy

to see her during the visitations and bonded with her. *Id*. We disagree.

Contrary to Mother's assertions, the certified record corroborates the

trial court's best interest analysis pursuant to § 2511(b). Initially, we note

that Mother never progressed beyond supervised visitation. Mr. DeJesus

indicated that unsupervised visitation was impossible due to Mother's

continued drug abuse. N.T., 2/18/16, at 18. Moreover, Mr. DeJesus expressed concern that Mother had been under the influence of drugs during some of her visitations with D.C.S., O.G.Z., and W.G., Jr. *Id*. at 21. He explained:

> During my time on the case, we had some concerns during some visits where [Mother] would come or she would be over excited or she appeared to be under the influence of some type of drugs and we would continue the visits because it would not put the children in harm but some of my staff members also, that would assist me with the visits, would mention it to me as a concern that she would come to a visit under the influence of some type of drug. We did not have a way to prove it because we do not do screens at our agency.

*Id*.

Further, D.C.S., O.G.Z., and W.G., Jr., are all in pre-adoptive homes. The girls, D.C.S. and O.G.Z., are together in the same foster home. Mother's now-eight-year-old son, W.G., Jr., is in kinship care with his paternal aunt. *Id*. at 22-24, 26, 27. While Mr. DeJesus acknowledged D.C.S., O.G.Z., and W.G., Jr., have a bond with Mother, he indicated that their "primary parent-child bond" and/or "primary parent-child relationship" is with their foster and kinship parents. *Id*. at 23-24, 26. Accordingly, D.C.S., O.G.Z., and W.G., Jr., look to their pre-adoptive foster and kinship parents for "love, safety, stability and support." *Id*. Additionally, the foster/kinship parents, not Mother, meet the children's developmental, educational, and medical needs. *Id*.

Notwithstanding Mother's protestations to the contrary, Mr. DeJesus opined that the children would not suffer "irreparable harm" or "trauma" if Mother's parental rights were terminated and they would no longer see her. *Id*. at 26, 31. The children's positive response to the three to four weeks of visitation that Mother missed due to her drug overdose demonstrates that no harmful consequences would flow from permanently severing the parental bond. Thus, the record supports the trial court's finding that the emotional needs and welfare of D.C.S, O.G.Z., and W.G., Jr., favor termination. Accordingly, based upon our review of the record, we find no abuse of discretion and conclude that the trial court appropriately terminated Mother's parental rights under 23 Pa.C.S. §§ 2511(a)(2) and (b).

Lastly, we turn to the question of whether the trial court appropriately changed D.C.S. permanency goal to adoption. Although the court found on the record that it was in the best interests of all three children to change their respective permanency goals to adoption, the court only entered an order as to D.C.S. N.T., 2/18/16, at 35; Permanency Review Orders, 2/18/16. Hence, we address Mother's argument only in relation to that child. We first note that our standard of review is the same abuse of discretion standard as noted above. *In the Interest of L.Z.*, 111 A.3d 1164, 1174 (Pa. 2015) (citing *In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010), for proposition that the abuse of discretion standard applies in a dependency matter). Further, following an examination and findings of factors provided in 42 Pa.C.S. § 6351(f) and (f.1), regarding matters to be determined at the

permanency hearing, the trial court must also find that a goal change is in Child's best interests. *See* 42 Pa.C.S. § 6351(g); *In re R.J.T.*, 9 A.3d 1179 (Pa. 2010).

Mother posits that the trial court should not have changed the permanency goal to adoption, as she had complied with all of her FSP goals, and as the children had a bond with her. Mother's brief at 6. However, upon review of the certified record, we find that Mother's claim lacks merit. The record reveals that a change of the permanency goal to adoption was in D.C.S.'s best interests. The child has been under some form of DHS supervision since September 2013 and Mother has received services since October 2013. The agency designed the FSP to help Mother address the central issue of her substance abuse problem. Nevertheless, Mother overdosed in October 2015, and tested positive for drug use on several occasions since August 2015, including as recently as January 20, 2016. N.T., 2/18/16, at 16-17, 20. Mother is in danger of discharge from her current treatment program due to non-compliance, and she failed to complete the drug treatment outlined in the FSP. *Id*. at 16-18. Indeed, the testimony demonstrates that she is unable to "reunify the children safely" due to her continuing drug abuse. *Id*. at 18. Further, Mr. Dejesus testified that it is in the best interests of D.C.S. to change the permanency goals to adoption. *Id*. at 27-28. As we find that the record supports the trial court's conclusion that the goal change was in the best interest of D.C.S., we discern no abuse of discretion in its decision to grant DHS's petition.

Based on the foregoing, we affirm the decrees terminating Mother's parental rights to D.C.S., O.G.Z., and W.G., Jr. and the order changing D.C.S.'s permanency goal to adoption.

Decrees affirmed. Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/18/2016